257 So.2d 397

**Martha Blasco MALONE, Plaintiff-Appellant-Relator,**

v.

**Bernard L. MALONE, Jr., Defendant-Appellee-Respondent.**

**No. 51196.**

Jan. 17, 1972.

Rehearing Denied Feb. 21, 1972.

Hebert, Moss & Graphia, Anthony J. Graphia, Baton Rouge, for plaintiff-appellant.

McGehee & McKinnis, E. Drew McKinnis, Baton Rouge, for defendant-appellee.

TATE, Justice.

This is a divorce proceeding. The issue before us concerns the liability of the dissolved community for the losing husband's attorney fees and for the court costs.

On the wife's appeal, the court of appeal affirmed the amount of alimony awarded by the trial court, and its holding that the husband's attorney fees (as well as the wife's) and the divorce litigation court costs were payable from community assets. 243 So.2d 100 (La.App.1st Cir. 1971). We granted certiorari, limited to review of the intermediate court's decision that the community should pay (a) the husband's attor-

ney fees and (b) the court costs. 258 La. 209, 245 So.2d 409 (1971).

The wife contends that the husband individually, not the community, is liable for his attorney fees and the court costs resulting from his unsuccessful defense of a divorce action. She argues that the attorney fees were incurred to protect his individual interests, not the community's (at least when he loses), and that he should be taxed with court costs just as usually is any other losing litigant. She relies principally upon the amendment of Civil Code Article 155 by Act 178 of 1962, effective August 1, 1962, as will be set forth more fully below.

In holding to the contrary, the court of appeal relied upon our decision in Pennison v. Pennison, 249 La. 587, 187 So.2d 747 (1966). There we held, with regard to a community terminated by judgment dated June 1, 1962, that the husband's attorney fees for legal representation in a divorce action have consistently been classified as a community debt, as enabling the husband to take necessary action to protect marital and community interests as well as his own.

In Pennison, the central issue was whether the community was liable for the attorney fees incurred by the husband in the divorce litigation. In contending to the contrary, the wife relied on Civil Code Article 150. This provides that, after suit for separation is brought, the husband may not bind the community nor alienate community effects.[1]

In Pennison, we rejected the contention for the reason earlier noted: that the husband's attorney fees in the divorce suit have always been classified by our jurisprudence as a community debt chargeable against the assets of the community. However, as the present wife suggests, the ruling in Pennison is not conclusive of the present litigation, due to subsequent legislation in effect at the time of the present divorce.

When Pennison was rendered (as it expressly notes, 187 So.2d 750), by reason of Article 155[2] of our Civil Code, as then in-

---

1. Civil Code Article 150 provides: "From the day on which the action of separation shall be brought, it shall not be lawful for the husband to contract any debt on account of the community, nor to dispose of the immovables belonging to the same, and any alienation by him made after that time, shall be null, if it be proved that such alienation was made with the fraudulent view of injuring the rights of the wife." See also Civil Code Article 159, providing that, pertinently to this issue, the effects of a divorce are the same as those of a judicial separation.

2. As of June 1, 1962, the effective date of the divorce judgment in Pennison v. Pennison, Article 155 pertinently provides: "Separation from bed and board carries with it the separation of goods and effects * * *." With regard to this, the effect of a divorce is the same as in the case of a judicial separation from bed and board. Civil Code Article 159.

terpreted, the community of acquets and gains was not dissolved until the date of the divorce judgment. This was the holding in Tanner v. Tanner, 229 La. 399, 86 So.2d 80 (1956). Thus, in Pennison, the court had no difficulty in declaring the husband's attorney fees, incurred before the judgment, a community debt. However, as to be noted, the 1962 legislation destroyed this basis for the Pennison decision.

The Tanner decision overruled prior jurisprudence. Such had always interpreted Article 155, consistently with Article 2432 [3] of our Civil Code, as providing that the community was dissolved in a successful separation or divorce suit effective retroactively as of the date of filing the petition, not as of the date of the judgment. Tanner v. Tanner, cited above, noted and criticized at 17 La.L.Rev. 306–08 (1957). This prior interpretation of Article 155 was legislatively restored by the amendment of Article 155 by Act 178 of 1962, effective August 1 of that year (*after* the date of the Pennison divorce judgment). See 23 La.L.Rev. 41–42 (1962).

As amended and re-enacted in 1962, Article 155 pertinently provides: "The judgment of separation from bed and board carries with it the separation of goods and effects and is retroactive to the date on which the petition for same was filed, but such retroactive effect shall be without prejudice (a) to the liability of the community for the attorneys' fees and costs incurred *by the wife* in the action in which the judgment is rendered, or (b) to rights validly acquired in the interim between commencement of the action and recordation of the judgment. * * *" (Italics ours.)

The wife thus argues that, by the 1962 amendment of Article 155, the legislature has expressly recognized that the wife's, but not the husband's attorney fees may be charged against the community, if incurred after the date of its dissolution. Since the dissolution of the community is effective as of the date of the filing of the suit, the husband's attorney fees incurred thereafter are, the wife argues, his individual responsibility, not the community's.

While this argument presents an issue not free of difficulty, we nevertheless believe that the legislature did not by this 1962 amendment intend to repudiate the long-established rule (relied on in Pennison, cited above) that the husband's attorney fees incurred in defense of the separation and divorce litigation are chargeable

---

3. Article 2432 provides that the judgment of separation of the property of the community is retroactive to the day on which the petition is filed in the suit. See, for instance, Gastauer v. Gastauer, 143 La. 749, 79 So. 326 (1918).

against the community.[4] The legislature merely recognized and re-stated the much later jurisprudential rule (rejected by our earlier jurisprudence, Tucker v. Carlin, 14 La.Ann. 734, decided in 1859), that the wife's attorney fees, as well as the husband's, are chargeable against the community. Benedict v. Holmes, 104 La. 528, 29 So. 256 (1900). See full discussion in Gosserand v. Monteleone, 159 La. 316, 105 So. 356 (1925).

As late as Tanner v. Tanner, in 1956, the liability of the community for the wife's attorney fees was still under attack. In fact, on first hearing, this court had disallowed the wife's attorney fees, incurred in defense of the husband's suit and on prosecution of an unsuccessful reconventional demand; the fees were disallowed as a non-community debt, since incurred after the effective date of the community's dissolution under the prior jurisprudence, namely, the filing of the husband's successful petition for divorce. Tanner v. Tanner, 229 La. 399, 86 So.2d 80 (decision on first hearing, 1955). It was only upon rehearing that the court reinstated the allowance of the wife's attorney fees as a charge on the community; the court did so, by overruling the prior jurisprudence to the contrary and holding that,

under Article 155, the community was dissolved, not as of the date of the filing of the petition, but only as of the date of the divorce judgment. Tanner v. Tanner, cited above (opinion on rehearing, 1956).

Thus, the 1962 amendment of Article 155 legislatively overruled the opinion on rehearing of this court in Tanner v. Tanner (1956) that the community was dissolved as of the date of the *judgment* of divorce or separation. However, in restoring the interpretation of the pre-Tanner jurisprudence (that, instead, the community is dissolved retroactively as of the date of filing of the *petition*), the legislature was careful not to restore the interpretation on the first Tanner hearing (1955) to the effect that, because of such interpretation, the wife's attorney fees in certain circumstances were not allowable as a charge against the community.

Both prior to Tanner v. Tanner (1956) and thereafter, the husband's attorney fees (and the wife's too, although less indisputably) were regarded as chargeable against the community, even though the jurisprudential interpretation was unquestioned that the community was dissolved as of the date of the filing of the suit, not as of the date of the decree of divorce or separation. Uchello v. Uchello, 220 La. 1061, 58 So.2d

---

4. The husband, as head and master of the community, Civil Code Article 2404, has authority to incur debts to defend or preserve it or its assets. The jurisprudence experienced greater difficulty in finding a basis for the community's liability for attorney fees incurred by the wife in a suit to dissolve it.

385 (1952); Talbert v. Talbert, 199 La. 882, 7 So.2d 173 (1942); Vicknair v. Terracina, 168 La. 417, 122 So. 276 (1929); Munchow v. Munchow, 136 La. 753, 67 So. 819 (1915).

When Article 155 was amended in 1962 to restore the pre-Tanner rule (but also to repudiate the Tanner implication that under the pre-Tanner rule the wife's attorney fees were not a charge against the community), we find no legislative intent to change the interpretation, unquestioned since earliest days, that the husband's attorney fees were a charge against the community assets. The express recognition of the wife's attorney fees as entitled to similar status was simply a legislative effort to assure equal treatment of the wife with the husband in this regard.

The trial and intermediate courts therefore correctly decided that the husband's attorney fees, as well as the wife's, constituted a debt chargeable to the community. For similar reasons, we affirm the assessment of court costs against the community rather than the husband individually, cf. Vicknair v. Terracina, 168 La. 417, 122 So. 276 (1929), aside from our finding of no abuse of discretion in so doing, see La.C. Civ.P.Arts. 1920, 2164.

We affirm the judgment of the court of appeal. The costs of review in this court and all other court costs are to be paid from the community of acquets and gains.

Affirmed.